CakutheRS, J.,
delivered the opinion of the court.
This is a proceeding under the bastardy acts, in which questions of parties, of evidence, and the right of appeal are presented.
On the 28th of January, 1853, Mary Sharp, then a single woman, appeared before G. F. Neely, a justice of the peace for Bedford county, and made oath that the defendant was the father of a bastard child, of which she had been delivered, on the 28th day of the preceding August. Upon this information, a warrant was issued and the defendant brought before the said justice of the peace, and entered into recognizance to appear before the next term of the county court to answer the charge. He there appeared, and made an issue, by filing his affidavit, denying the accusation. The issue was tried by the court, and decided in his favor, *217 from which an appeal was granted, to the said Mary Sharp, without security, upon her taking the pauper oath, to the circuit court. After one mistrial, several continuances, and a suggestion of the marriage of Mary Sharp with James A. Lucas, and a change of the style of the case, as it now appears, a trial was had at the August term, 1854, and the defendant was found guilty by a jury, and adjudged by the court to be the father of the said bastard. Whereupon he was recognized to appear at the next term of the county court “to be dealt with as the law directs.” Motions for a new trial and in arrest of judgment were overruled by the court, and appeal in error to this court.
The main ground relied upon for a new trial, is, that an appeal could not be taken by the woman from the decision in the county court, but only by the State, if at all.
The legislates of 1851, which made so many changes in the law for the furtherance and promotion of justice by the removal of all formal and technical obstructions which lay in the way, without regard to the veneration due to their age and antiquity, did not omit to provide for cases of bastardy. In chap. 18?, after providing for the enforcement of recognizances taken by justices, for the appearance of persons charged in the county court, in case of failure to attend, it is provided in case they do attend, and make an issue by denying the paternity of the child on oath, as prescribed by the-act of 1822, ch. 29, and the same is tided and decided by the county court, “that either party shall have the right to appeal to the circuit court, where the case shall be tried by a jury, as in other cases of issues of *218 tact.” This was certainly a wise provision, as great injustice might he done to either party In a tribunal where there is no jury, and hut indifferent 'qualifications to conduct an exciting and difficult investigation, according to the rules of law. Even the wicked and debased should have even-handed justice, so far as they have rights which are founded in the law. The law is made for the protection of all, of every grade and condition, and should be administered in its purity to every one who is permitted to enter into its temples, and the way made open to the highest tribunals provided for the correction of errors.
But the controversy here Is, what is meant by “either party.” It is insisted that the mother of the bastard is not the party referred to, but it is the State on one side, and the accused on the other. It is true, that the proceeding is in the name of the State, for the use, either expressly or impliedly of the mother, and upon her information, and she is in fact the actor. The public have an interest in the proceeding, so far as to have a bond given to indemnify the county against the child ever becoming a public charge, but' the main and principal interest is, that of the mother, under the act of 1822, which provides for an allowance to be made for her, to aid in the support of herself and child for three years, out of the property of him, who is often the wicked instrument of her ruin. She is mainly interested, and acts for her own benefit, having a right in her weakness and degradation, to the great name and strong arm of the State, in her demands for justice. Although the suit is in the name of the State, yet these contests are in their nature, *219 under our laws, between tbe mother and reputed father of the unfortunate' bastard, for the support of the fruit of their mutual crime. The representative of the State, the attorney general of the different circuits, cannot be present at all the county courts where these issues may be tried, to determine in behalf of the State, whether injustice is clone, and an appeal proper to be taken. Eor these and other reasons that might be assigned, we think the legislature in giving the right of appeal to either party; had reference to the mother, in case she thought injustice had been done her by the county court, although the proceeding is in the name of the State, it being mainly for her benefit. And this being settled, there certainly could not be a stronger case for the application of the act made for the benefit of those who are unable to give security for cost. There is then no error in allowing the ■ appeal, or in dispensing with security for cost, on the pauper affidavit made by her. Nor is there error in permitting her husband, who had become such after the appeal, to be united with her upon the record, by amendment.
There is certainly nothing more common in our practice than suits in the name of the State for the use and benefit and under the control of others. Such is the case in all bonds taken to the State in penalties for the performance of duties in which individuals are interested. It was held by this court, at Knoxville, that a prosecutor in a peace warrant, which is in the name of the State, and properly a State proceeding, if ■the defendant is improperly discharged by the justice of the peace before whom the case is to be tried, may have redress or re-examination by petition in the name *220 of the State, in the circuit court, on bringing up the case by certiorari. And this is- upon the ground that the proceeding is instituted by, and for the benefit of the prosecutor, and for his individual protection and safety, and not for the infliction of punishment for crime.
These analagous cases go strongly to sustain the principle on which we place the case under consideration. We have no doubt of its correctness in its present application.
The second objection is, to the effect given to the affidavit, by the charge of the court. He charged that the accusatory affidavit of the woman, as well as that of the defendant, denying the charge, were both evidence to be weighed and considered by the jury. This is unquestionably correct. Until the late act to which reference has been made, the affidavit of the mother of the bastard was conclusive, even against the affidavit of the reputed father, which served no other purpose but to entitle him to an issue, unless he could exonerate himself by proof. But now, his affidavit by the 3rd section of said act, is to be received as evidence for him on the trial of the issue. They are both interested in the result, but this can only go to their credit under these statutes.
The court gave the proper judgment on the verdict, which was, that the defendant should be regarded as the father of the bastard child, pay the cost, and enter into a recognizance to appear at the county court to abide by and perform such judgments and orders as that tribunal might render, according to the act of 1822.
The judgment will be affirmed, and the defendant re *221 quired to enter into a recognizance here to appear at the March term of the county court of Bedford, to be dealt with as the law directs.